UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARLENE E. HOWELL**,** <br> Parent and Next Friend of DH <br><br> Plaintiff, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.,* | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-1066 (RMU) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants, by counsel, hereby respond to plaintiff's "Motion for Temporary Restraining Order" ("Motion"). For the reasons set forth below, the Motion should be dismissed as moot.

## PRELIMINARY STATEMENT

On June 4, 2007, plaintiff filed the instant lawsuit in the Superior Court of the District of Columbia. Defendant filed a Notice of Removal on June 15, 2007. On July 12, 2007, the file was transferred from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia, and on August 28, 2007, this honorable Court ordered defendant to respond to plaintiff's motion on or before September 14, 2007.

Plaintiff seeks to have the Court compel defendants to comply with a settlement agreement entered into by the District of Columbia Public Schools ("DCPS") and plaintiff, pursuant to the Individuals With Disabilities Education Improvement Act of

2004, 20 U.S.C. Sections 1400 *et seq*. ("IDEIA"), on December 18, 2006, and modified by a January 10, 2007, amended Individualized Education Plan ("IEP").

Pursuant to the settlement agreement and amended IEP, DCPS agreed to provide the student with a lap top computer, several software programs, a digital voice recorder, and ten hours of compensatory education. (Plaintiff's Ex. 1) No time frame was set forth for provision of the assistive technology or services, and DCPS indicated it would take <u>at least</u> 90 days to obtain everything. (Plaintiff's Ex. 2 at 2)

A Dell Wireless Lap Top computer, was acquired by DCPS on June 26, 2007, and picked up by the student's mother on June 27, 2007. (Defendants' Ex. 1) Best Buy agreed to ship the requested software, when it received it, directly to the student's parents, but because neither parent was willing to wait at home for the UPS shipment, DCPS personally delivered the software to the plaintiff's residence on July 20, 2007. (Declaration of Karen Shaw) The software included a digital voice recorder, Soothsayer software, Graphic Organized software and Wynn Wizard literacy software. (Defendants' Ex. 2)

On July 24, 2007, Karen Shaw, Interim Director of Federal and Family Court Monitoring for the District of Columbia Public Schools, left a message for Mrs. Howell on her voice mail, requesting her to call Dr. Mebane, Acting Principal at Sharpe Health School, to schedule the promised ten hours of assistive tutoring/compensatory education for her son. Shortly thereafter Dr. Mebane also called Mrs. Howell to set up a time to meet with the parent and student to provide tutoring. Dr. Mebane provided Mrs. Howell with her phone number and asked her to call when she had finished scheduling the

student for his college courses,[1] so that Dr. Mebane could better ascertain the student's educational needs and align his tutoring with the courses he would be taking. Dr. Mebane further informed Mrs. Howell, that even though she was on vacation she would nonetheless, tutor the student at home. Mrs. Howell did not contact Dr. Mebane. Dr. Mebane, called Mrs. Howell again in September, and set up a meeting for September 8, 2007. Because of unforeseen traffic, Dr. Mebane arrived late and Mrs. Howell insisted that the meeting be rescheduled. Dr. Mebane is currently scheduled to begin tutoring the student on September 14th. (Declaration of Karen Shaw)

## ARGUMENT

### I. This Court Lacks Jurisdiction Over the Instant Matter.

#### A. The Case is Moot.

"Article III of the Constitution limits federal 'judicial power,' that is, federal court jurisdiction, to 'Cases' and 'Controversies.' This case-or controversy limitation serves 'two complementary' purposes. (citation omitted) It limits the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process,' and it defines the 'role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government.' (citation omitted). Likewise, mootness has two aspects: 'when the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome.'" (citation omitted). *United States Parole Commission v. Geraghty,* 445 U.S. 388, 395, 396 (1980).

"A federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' (citation

---

[1] The student currently attends Montgomery College.

3

omitted).  For that reason, **if [] events occur while a case is pending on appeal that make [] it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed [as moot].**" (citation omitted) (emphasis added).  *United States of America, v. Weston*, 194 F.3d 145, 147, 148 ((D.C. Cir. 1999)

      That is precisely what has occurred here.  Even assuming plaintiff's Complaint had merit at some point, which it did not, there is simply no relief left that this Court can order.  Events have transpired such that there no longer exists a case or controversy between the plaintiff and defendants.   Plaintiff has received the requested relief and, accordingly, the case is moot. See *Board of School Commissioners of the City of Indianapolis et al. v. Jacobs et al.*, 420 U.S. 128, 129 (1975).

### B.  This Case Does Not Fall Under an Exception to the Mootness Doctrine.

      The doctrine of "capable of repetition yet evading review" is an exception to mootness for cases where the party can demonstrate that "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again".  *United States v. Weston,* 194 F.3d 145, 148 (D.C. Cir. 1999).  Here, DCPS has provided the student with all the equipment and services promised in the December 18, 2006, Settlement Agreement and January 10, 2007, IEP.  Further, the student graduated from high school in June, 2007, and is currently enrolled in a local college.  Accordingly, the case does not fall under an exception to the mootness doctrine and must be dismissed.

However, should this Court determine this case is not moot, the Motion should nonetheless be dismissed, as plaintiff is not entitled to injunctive relief.

## II.     The Applicable Standards for Injunctive Relief.

In order to obtain injunctive relief, plaintiff must satisfy *each* prong of the following four-part test: (1) that there is a substantial likelihood of success on the merits; (2) that there is an imminent threat of irreparable harm should the relief be denied; (3) that more harm will result to plaintiff from the denial of the injunction than will result to the defendants from its grant; and (4) that the public interest will not be disserved by the issuance of the requested order. District of Columbia v. Group Ins. Admin., 633 A.2d 2, 21–24 (D.C. 1993); Barry v. Washington Post Co., 529 A.2d 319, 320–321 (D.C. 1987); In re Antioch Univ., 418 A.2d 105, 109 (D.C. 1980); Wieck v. Sterenbuch, 350 A.2d 384, 387 (D.C. 1976); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir. 1958).

### A.     Plaintiff Is Not Entitled to Injunctive Relief in This Case.

#### 1.     The Plaintiff will not succeed on the merits of her claims.

Plaintiff's only claim is that defendants failed to comply with a December 18, 2006, Settlement Agreement and a January 10, 2007 amended IEP. (Motion at 3) As shown above defendants have provided the equipment and services called for in the Settlement Agreement and the amended IEP. Accordingly, since plaintiff's claim is now moot, she cannot succeed on the merits of her claims.

### 2. There has been no demonstration that the student will suffer irreparable harm in the absence of injunctive relief.

An essential prerequisite to injunctive relief is a sufficient showing by the plaintiff that she will suffer irreparable harm if injunctive relief is not granted. See, e.g., Davenport v. International Brotherhood of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999). See also Sampson v. Murray, 415 U.S. 61, 88–90 (1974). "[A]n injunction should not be issued unless the threat of injury is imminent and well-founded, *and* unless the injury itself would be incapable of being redressed after a final hearing on the merits." Wieck, 350 A.2d at 388 (emphasis added). See also Wisconsin Gas Co., 758 F.2d at 674. Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. Id. *See also* Spencer v. District of Columbia, Civ. No. 05-2439 (D.D.C.) Memorandum Opinion, January 11, 2006, pp. 3-4.

The movant has the burden to come forward with admissible evidence that she will suffer irreparable harm unless injunctive relief is granted. Davenport, 166 F.3d at 360. In the instant case, plaintiff makes only general assertions of the harm that might befall the student. Given that the student timely graduated from high school and is currently enrolled in college, there can be no showing of irreparable educational harm.

### C.   The Balance of Harms Favors the Defendants.

As to this element, the plaintiff claims that defendants stand to lose nothing if her motion is granted, but that plaintiff will suffer academic failures, failed IEP goals, and psychological harm. (Motion at 8) These summary assertions are not facially sufficient to meet plaintiff's burden. Further, as previously stated, the student timely graduated from high school, is currently enrolled in college, and has received all the equipment and

6

services which had been promised. Thus plaintiff has not and, cannot demonstrate that she has been or, will be harmed.

In fact the only relief that plaintiff still seeks is attorneys' fees. Plaintiff cannot argue that if the ultimate relief of attorneys' fees is not granted by an affirmative injunction ordering the immediate payment of fees that plaintiff will be irreparably harmed.

### D.   Granting the preliminary injunction would not be in the public interest.

As to this element plaintiff states only that it is in the public interest for the District government to honor IDEIA settlement agreements. This summary assertion is not facially sufficient to meet plaintiff's burden. Further, in weighing the balance of interests here, defendant reiterates that plaintiff has received all the relief requested. While plaintiff may not have received the items promised in the settlement agreement as quickly as she would have liked, there is no indication here that the student has suffered any educational injury. To continue with this case would only be a waste of judicial resources.

### III.   As a Parent of D.H. Plaintiff's Counsel is Not Entitled to Attorney's Fees.

In her Complaint, plaintiff not only seeks enforcement of the December 18, 2006, Settlement Agreement and January 10, 2007, amended IEP, but also an award of attorneys' fees and costs for the litigation of this case. (Complaint at 7) D.H., on whose behalf this case is being brought, is the son of Roy Carleton Howell, attorney for the plaintiff. Case law is clear that attorneys' fees may not be awarded for legal services performed by an attorney/parent who obtains special education benefits for his/her child

7

under the IDEIA. <u>Woodside v. The School District of Philadelphia Board of Education</u>, 248 F.3d 129, 131 (3rd Cir 2001); <u>Doe v. Board of Education of Baltimore County,</u> 165 F.3d 260, 264 (4th Cir. 1998), cert. denied, 526 U.S. 1159 (1999). *See also* <u>Kay v. Ehrler</u>, 499 U.S. 432 (1991), <u>Bowman v. District of Columbia,</u> Civ. No. 06-0016 (D.D.C.) (Memorandum Opinion August 1, 2007, pp. 9-10).

## **CONCLUSION**

For the Court to grant extraordinary injunctive relief, plaintiff must clearly show (1) that there is a substantial likelihood of success on the merits of the case, (2) that irreparable harm would occur to plaintiff absent such relief, (3) that an injunction would not substantially harm the rights of the District, and (4) that an injunction is in the public interest. *Washington Metro. Area Transit Comm'n v.Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1971).

Plaintiff's Motion fails to satisfy any of the four factors.  First, plaintiff does not have a substantial likelihood of success on the merits; plaintiff has received all the requested relief, such that her claim is now moot.  Second, plaintiff cannot show irreparable harm. The student timely graduated from high school and is currently enrolled in college.  Third, the balance of harms does not favor the plaintiff.  Fourth, granting the TRO would not be in the public interest because it is a waste of judicial resources. In sum, plaintiff's motion does not meet *any* of the required elements and should be dismissed.

Accordingly, plaintiff's motion for a TRO should be denied.

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.,   Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

September 13, 2007



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

*Office of the Chief Academic Officer*
825 North Capitol Street, NE, Eighth Floor
Washington, DC 20002-4232
202/442-5599, fax: 202/442-5602
www.k12.dc.us

June 27, 2007

Darlene Howell
8003 Parkside Lane, NW
WASHINGTON, DC 20012

RE: Devin Howell

As part of the HOD settlement pertaining to Devin Howell, the District of Columbia Public Schools (DCPS) has agreed to provide compensatory education services or products to your son. You have selected a product (Dell laptop computer). Therefore, this letter serves as an official receipt acknowledging that on June 27, 2007, Ms. Darlene Howell picked up from the DCPS Office of Special Education - a Dell laptop computer with carrying case (spec sheet attached) as part of the HOD Settlement Agreement. Software initially ordered under this agreement will be shipped directly from Best Buy when it becomes available.

Someone from Best Buy will be contacting you within the next month to finalize the scheduled for delivery of the computer software. If you have any questions about this process, please call Ms. Karen Shaw at (202) 442-5446.

**Product: Dell Wireless Laptop Computer – 15 inch Wide Screen, 1.80GHz, 800Mhz**

The undersigned herby acknowledges receipt and delivery of the goods or service listed above or described on the attached spec sheet. The undersigned acknowledges that by receiving these goods or services, DCPS has satisfied its obligation to provide compensatory education related to Blackman/Jones delays.

_Darlene Howell_                               6/27/07
Print Name of Recipient                        Date

_Darlene Howell_ (signature)                   mother
Signature of Recipient                         Relationship to Student

_Karen Shaw_ (signature)
Witnessed by DCPS Employee:



# Blackman/Jones
# Compensatory Education Catalog

## ACKNOWLEDGEMENT OR RECEIPT OF GOODS AND WAIVER

Name of Student: **Devin Howell**    Date of Birth: **1/6/89**

Name of Parent/Guardian: **Darlene Howell**

Address: **8003 Parkside Ln, NW**
**Wash DC 20012**

As part of the *Blackman/Jones* settlement, the District of Columbia Public Schools (DCPS) has agreed to provide compensatory education services or products to members of the class. As a member of the class, you have selected a product or a service from the DCPS Compensatory Education Catalog. Your signature on this form acknowledges that you have received the goods or services selected from the catalog and therefore DCPS has fulfilled its obligation to provide you with compensatory education under the *Blackman/Jones* Consent Decree.

Product or Services Delivered: **Co-Writer Sawyer Software, Digital Voice Recorder, Graphic Organizer Software, W/nn Wizard Literacy Software**

### ACKNOWLEDGMENT:

The undersigned hereby acknowledges receipt and delivery of the goods or service listed above or described on the attached invoice. The undersigned acknowledges that by receiving these goods or services, DCPS has satisfied its obligation to provide compensatory education related to Blackman/Jones delays.

Print Name of Recipient: **Darlene Howell**    Date: **7/20/07**

Signature of Recipient: **Darlene S. Howell**

Relationship to Student: **Mother**

### WITNESS:

Print Name of Witness: **Karen Shaw**    Date: **7/20/07**

Signature of Witness: _____

This catalog is not a Best Buy Advertisement. It is not intended for the general public.
Best Buy is not a party to this litigation and is merely helping facilitate the settlement of this matter.

**DECLARATION OF KAREN SHAW**

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following statement is true and correct:

1.      My name is Karen Shaw.  I am the Interim Director of Federal and Family Court Monitoring for the District of Columbia Public Schools.  I have held this position since May, 2007.

2.      As the interim Director for Federal and Family Court Monitoring for DCPS, my duties include the monitoring of compensatory education awards required under the Blackman Jones class action lawsuit.

3.      In my capacity as Interim Director of Federal and Family Court Monitoring for DCPS, and in an effort to insure compliance, I reviewed the case concerning Devin Howell and the agreement that was entered into with the Office of Special Education on January 12, 2007.

4.      On June 27, 2007, Darlene Howell received a Dell laptop computer from DCPS Office of Special Education.  At that time Mrs. Howell was informed that someone from Best Buy would contact her to schedule delivery of computer software.

5.      Darlene Howell informed the affiant that she was unwilling to wait at home for delivery of the computer software by UPS.  Thus, on July 20, 2007, the affiant personally delivered to the Howell residence a digital voice recorder, Soothsayer software, Graphic Organized software and Wynn Wizard literacy software.

6.      On July 24, 2007, the affiant left a message for Mrs. Howell on her voice mail, requesting her to call Dr. Mebane, Acting Principal at Sharpe Health School, to schedule the promised ten hours of assistive tutoring/compensatory education for her son.

7.      As a result of numerous conversations with Dr. Mebane, the affiant has been informed that Dr. Mebane also called Mrs. Howell to set up a time to meet with the parent and student to provide tutoring.

8.      The affiant has been informed further that Dr. Mebane provided Mrs. Howell with her phone number and asked her to call when she had finished scheduling the student for his college courses. Dr. Mebane further told Mrs. Howell, that even though she was on vacation she would nonetheless, tutor the student at home.

9.      The affiant has been informed further that Mrs. Howell did not contact Dr. Mebane and, that Dr. Mebane called Mrs. Howell again in September, and set up a meeting for September 8, 2007.

10.      The affiant has been informed further by Dr. Mebane that because of unforeseen traffic, Dr. Mebane arrived late at the Howell residence on September 8, 2007, and that Mrs. Howell insisted that the meeting be rescheduled. Dr. Mebane is currently scheduled to begin tutoring the student on September 14th.

/s/ Karen Shaw

KAREN SHAW
Interim Director of Federal and Family Court Monitoring
for the District of Columbia Public Schools

September 12, 2007