UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| DARLENE E. HOWELL, | ) | |
| Parent and Next Friend of DH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 07-1066 (RMU) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.,* | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Come now defendants, by counsel and oppose plaintiffs' Motion for Summary Judgment filed on September 18, 2007.  For the reasons set forth below, the Motion should be denied.

## PRELIMINARY STATEMENT

On June 4, 2007, plaintiff filed the instant lawsuit, moving for a Temporary Restraining Order ("TRO"), in the Superior Court of the District of Columbia. Plaintiff sought to have the Court compel defendants to comply with a settlement agreement entered into between the District of Columbia Public Schools ("DCPS") and plaintiff, pursuant to the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. Sections 1400 *et seq*. ("IDEIA"), on December 18, 2006, and modified by a January 10, 2007, amended Individualized Education Plan ("IEP"). In that agreement DCPS agreed to provide D.H. with a lap top computer, several software programs, a digital voice recorder, and ten hours of compensatory education.  (Ex. 1, Settlement

Agreement) The ten hours of compensatory education were to be provided by Kingsbury

School.  (Ex. 2, Amended IEP)  Defendant filed a Notice of Removal on June 15, 2007.

On July 12, 2007, the file was transferred from the Superior Court of the District

of Columbia to the United States District Court for the District of Columbia, and on

August 28, 2007, this honorable Court ordered defendant to respond to plaintiff's motion

on or before September 14, 2007.  The Court further ordered plaintiff to reply to

defendants' opposition on or before September 21, 2007.  Defendants filed an Opposition

to plaintiffs' motion for a TRO on September 13, 2007.  Instead of filing a response to

defendants' Opposition, plaintiffs filed a Motion for Summary Judgment on September

18, 2007.

Accordingly, this Court should dismiss plaintiff's Motion for a TRO as closed.

Further, because plaintiff has failed to comply with Local Rules 7.1(h) and 56.1 and,

because defendants believe there are facts in dispute, the plaintiff's Motion for Summary

Judgment must be denied.

## <u>ARGUMENT</u>

### I.      <u>The Legal Standard for Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law.  Material facts are those "that might affect the

outcome of the suit under the governing law." <u>Farmland Industries, Inc. v. Grain Board of

Iraq,</u> 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing <u>Anderson v. Liberty

Lobby, Inc.,</u> 477 U.S. 242, 248 (1986)).[1]

---

[1] <u>Anderson v. Liberty Lobby, Inc,</u> <u>supra</u>, 477 U.S. at 248, similarly describes the rule for determining
materiality:

II.    **Plaintiff Has Failed To Comply With the Requirements of LCvR 7.1(h) and 56.1**

Local Rules 7.1(h) and 56.1 are "clear and explicit." Washington Bancorporation v. Said, 812 F. Supp. 1256, 1278 (D.D.C. 1993). They require that a party moving for summary judgment must submit a Statement of Material Facts as to which there is No Genuine Dispute and to support these facts with citations to the record. See LCvR 7.1(h) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."); LCvR 56.1 (same). Plaintiff has not done so. This Court should refuse to credit any of the facts that plaintiff claims are not in dispute, thereby preventing an entry of summary judgment on their behalf.

"The importance of filing a proper…statement is well established." Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner, 101 F.3d 145, 151 (D.C. 1996) (citations omitted). It is meant to "assist[] the district court to maintain docket control and to decide motions for summary judgment sufficiently and effectively," id. at 150, and to prevent if from having to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact," id. at 151 (citations omitted). It is the

---

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinning of those disputes.

party's responsibility and that of her counsel "to crystallize for the district court the material facts and the relevant portions of the record." Id. Here, plaintiff has not done so. Accordingly, her motion for summary judgment should be denied.

### III. DCPS Has Complied with the December 18, 2006 Settlement Agreement and the January 10, 2007 Amended IEP.

In the instant case, plaintiff alleges that defendants have failed to fully comply with a December 18, 2006, settlement agreement and a January 10, 2007, amended IEP. Plaintiff does not dispute that D.H. has been given all the assistive technology called for by the agreement, but asserts that it was not timely delivered. While plaintiff claims that the assistive technology was to be delivered within 90 days, the Resolution Meeting Notes make it clear that "DCPS indicated it would take at least 90 days to get the assistive technology with recommended hardware for the student." (Ex. 3, Resolution Meeting Notes)

Plaintiff also alleges that the student has not received all the agreed upon tutorial services. However, the January 10, 2007, amended IEP provides for Kingsbury School, where the student was enrolled, not DCPS, to provide the student with 10 hours of tutoring services. (Amended IEP) Nonetheless, because the student has graduated from Kingsbury School, DCPS has been making a good faith effort to provide the student with the tutoring services which were not provided by Kingsbury. Plaintiff's actions in this matter have thwarted DCPS' attempts.

Plaintiff and Dr. Ramona Mebane, a DCPS special education teacher and former Assistant Principal at Sharpe Health School, who agreed to provide D.H. with tutorial services, first spoke at the end of July or early August, 2007. At that time, it was decided

4

that since the student had graduated from high school, and was preparing to enroll in a local community college which might provide him with additional services, that Dr. Mebane and plaintiff would pick dates for tutorial services once the student had his course schedule and knew what services he could receive. (Ex. 4, Second Declaration of Karen Shaw) When Dr. Mebane failed to hear from the plaintiff at the beginning of the 2007-2008 school year, she contacted the plaintiff, who informed her that she had lost Dr. Mebane's phone number.  (Second Declaration of Karen Shaw)

The two subsequently discussed the provision of tutorial services.  Dr. Mebane suggested that the special instruction take place at Sharpe Health School, the D.C. public school where Dr. Mebane was working.  However, plaintiff refused to have her son go there.  As a result, Dr. Mebane agreed to visit the student at his home, on Saturdays, a non-working day for Dr. Mebane.  (Second Declaration of Karen Shaw) This was offered despite the fact that while DCPS had agreed that the student was to receive ten hours of compensatory education, to be provided by Kingsbury School, nothing in either the settlement agreement or the amended IEP mandated that those hours be provided in the student's home.  (Settlement Agreement and Amended IEP)

The first day on which Dr. Mebane was to begin tutoring was September 8, 2007. Because of unexpected traffic, Dr. Mebane arrived late and plaintiff refused to have the tutoring take place.[2]  Thus, Dr. Mebane had just wasted two hours of travel time for nothing.  Dr. Mebane tutored the student the following Saturday, September 15, 2007, for

---

[2] It is to be noted that while plaintiff complains in her Affidavit that she was required to wait at the Office of Special Education before she could pick up a laptop computer for D.H., that plaintiff fails to state that she arrived in the afternoon of June 27, 2007, as opposed to the morning of that day, the time agreed upon. Thus, when plaintiff arrived, Karen Shaw, who was to give the computer to plaintiff, was not available. Nonetheless, plaintiff was given the computer despite arriving several hours later than the agreed upon time.

approximately 90 minutes. Attempts to provide further tutorial service are ongoing. However, because of plaintiff's refusal to have D.H. receive his tutoring at a DC public school during regular school hours, scheduling is difficult, through no fault of DCPS.

Where, as here, defendants have engaged in a good faith effort to provide the student with tutorial services, but plaintiff has refused to cooperate, DCPS should not be found liable of any violation. *See* MM v. Sch. Dist of Greenville County, 303 F.3d 523, 536 (4th Cir. 2002).

### III.    Plaintiff is Not Entitled to Filing Fees in This Case

In addition to attorneys' fees, plaintiff seeks to recover filing fees in the instant case. Plaintiff has cited no legal authority to support her position. As set forth in detail in defendants' Opposition to Plaintiffs' Motion for a TRO, plaintiff is not entitled to attorneys' fees in the instant case because D.H., on whose behalf this case is being brought, is the son of Roy Carleton Howell, attorney for the plaintiffs. Case law is clear that attorneys' fees may not be awarded for legal services performed by an attorney/parent who obtains special education benefits for his/her child under the IDEIA. Woodside v. The School District of Philadelphia Board of Education, 248 F.3d 129, 131 (3rd Cir 2001); Doe v. Board of Education of Baltimore County, 165 F.3d 260, 264 (4th Cir. 1998), cert. denied, 526 U.S. 1159 (1999). *See also* Kay v. Ehrler, 499 U.S. 432 (1991), Bowman v. District of Columbia, Civ. No. 06-0016 (D.D.C.) (Memorandum Opinion August 1, 2007, pp. 9-10). (Opposition at 7-8)

The rationale behind these court decisions is that "the statutory policy of furthering the successful prosecution of meritorious civil rights claims is better served by a rule that creates an incentive to retain independent counsel, rather than a rule that

creates an incentive to represent one's self." W<u>oodside v. The School District of Philadelphia Board of Education</u>, 248 F.3d 129, 131, citing <u>Kay v. Ehrler</u>, 499 U.S. 432, 438 (1991).  This same rationale applies whether it is the cost to file a lawsuit by a parent/attorney or the time spent litigating the lawsuit.  In fact, the IDEIA prohibits attorneys' fees **and related costs** under certain circumstances.  *See* U.S.C. Sec.1415 (i) (D) (i).

<u>**CONCLUSION**</u>

In the instant case there are a number of material facts in dispute which mandate that the instant motion be denied.  To cite but a few: plaintiff claims that the December 18, 2006, settlement agreement mandated compliance within 90 days.  However, the Resolution Meeting Notes indicate that defendants told plaintiff that at least 90 days would be needed to obtain all the equipment, and that plaintiff agreed.  While not all the promised tutorial services have been provided, DCPS claims that it has acted in good faith in trying to provide them, while plaintiff has acted in bad faith.  Plaintiff asserts the opposite.  Plaintiff alleges that defendants made no effort to comply with the December 18, 2006, settlement agreement prior to the filing of the instant lawsuit.  Defendants maintain that they had requested the promised equipment before the instant lawsuit was filed.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.,   Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov

October 1, 2007

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DARLENE E. HOWELL**,**            )
Parent and Next Friend of DH,     )
                                  )
            Plaintiff,            )
                                  )            Civil Action No. 07-1066 (RMU)
      v.                          )
                                  )
DISTRICT OF COLUMBIA, *et al.,*   )
                                  )
_____ )

## DEFENDANTS' STATEMENT OF MATERIAL FACTS THAT ARE IN DISPUTE[3]

1.      Defendants dispute that the December 18, 2006, Settlement Agreement

        has been violated.  Plaintiff has been provided with a Dell laptop computer,

        a digital voice recorder, Soothsayer software, Graphic Organized software

        and Wynn Wizard literacy software. (Defendants' Ex. 5,

        Acknowledgement of Receipt of Goods).  Kingsbury School was to

        provide the student with 10 hours of compensatory education.  (Amended

        IEP at 2) Because the student has graduated from Kingsbury, defendant is

        trying to provide the tutorial services, but has been prevented by plaintiff

        from doing so.  (Ex. 6, Declaration of Karen Shaw and Ex. 4, Second

        Declaration of Karen Shaw)

2.      Defendants dispute that they have violated the January 10, 2007,

        Individualized Education Plan.  ("IEP")  Plaintiff has been provided with a

        Dell laptop computer, a digital voice recorder, Soothsayer software,

---

[3] While plaintiff failed to comply with Local Rules 7.1(h) and 56.1, defendants will nonetheless, respond to the Statement of Undisputed Facts as best they can.

Graphic Organized software and Wynn Wizard literacy software.

(Defendants' Ex. 5,– Acknowledgement of Receipt of Goods). Kingsbury

School was to provide the student with 10 hours of compensatory

education.  (Amended IEP at 2) Because the student has graduated from

Kingsbury, defendant is trying to provide the tutorial services, but has

been prevented by plaintiff from doing so. (Ex. 6, Declaration of Karen

Shaw and Ex. 4, Second Declaration of Karen Shaw)

3.      Defendants dispute material fact numbered 3.  No time frame was set forth

for provision of the assistive technology or services, and DCPS indicated

it would take at least 90 days to obtain everything.  (Defendants' Ex. 3,

Resolution Meeting Notes)

4.      Defendants dispute that there was a 90 day time period in the Settlement

Agreement.  (Defendants' Ex. 3, Resolution Meeting Notes)

5.      Defendants dispute material fact numbered 5.  Plaintiff has failed to

cooperate in the provision of tutorial services through no fault of

defendants.  (Ex. 4, Second Declaration of Karen Shaw)

6.      Defendants dispute material fact numbered 6.  Plaintiff Darlene Howell

has not acted in good faith in these matters.  Plaintiff has refused to send

the student to Sharpe Health School, where the student's tutor is located.

Plaintiff has insisted that tutoring sessions occur in her home, despite there

being no such mandate in the December 18, 2006, Settlement Agreement

or the January 10, 2007, amended IEP.  (Second Declaration of Karen

Shaw)

7.      Defendants dispute material fact numbered 7.  Dr. Mebane has acted in good faith, agreeing to provide tutorial services to the student at his home, despite there being no such mandate in the December 18, 2006, Settlement Agreement or the January 10, 2007, amended IEP.  Dr. Mebane went to the student's home on September 8, 2007, prepared to tutor the student but plaintiff did not permit her to proceed.  Dr. Mebane tutored the student at his home on Saturday, September 8, 2007, a Saturday, during her day off. (Declaration of Karen Shaw)

8.      Defendants dispute that plaintiff telephoned Dr. Mebane "immediately" in July upon being given her name and phone number.

9.      Defendants dispute that Dr. Mebane stated that she would not provide tutoring services.  Dr. Mebane attempted to tutor the student on September 8, 2007, at his home, but was not permitted to do so by the plaintiff.  Dr. Mebane provided approximately 90 minutes of tutoring to the student on September 15, 2007.  (Second Declaration of Karen Shaw)

10.     Defendants dispute material fact numbered 10.  Dr. Mebane attempted to tutor the student at the beginning of September (September 8, 2007), at his home, but was not permitted to do so by the plaintiff.  (Second Declaration of Karen Shaw)

11.     Defendants dispute material fact numbered 11.  Dr. Mebane provided tutorial services to the student, later in September--September 15, 2007. (Second Declaration of Karen Shaw)

12.    Defendants dispute material fact numbered 12.  Dr. Mebane attempted to provide tutorial services on September 8, 2007, and provided tutorial services on September 15, 2007.  The following Saturday, September 22, 2007, had not yet arrived at the time plaintiff filed her Motion for Summary Judgment.  Because plaintiff insists that the tutorial services be provided at her home, the only available date for Dr. Mebane is Saturday, her day off.  (Second Declaration of Karen Shaw)

13.    Defendants agree that a tutorial session occurred on September 15, 2007, but dispute that it lasted for one hour.  It lasted for approximately 90 minutes.  (Second Declaration of Karen Shaw)

14.    Defendants dispute material fact numbered 14.  Dr. Mebane provided the student with approximately 90 minutes of tutorial services.  (Second Declaration of Karen Shaw)

15.    Defendants dispute material fact numbered 15.  DCPS has been thwarted in its attempts to provide more tutoring by the plaintiff.  (Second Declaration of Karen Shaw)

16.    Defendants dispute material fact numbered 16.  Plaintiff has been unreasonable in her demands, seeking to have the tutor go to plaintiff's home, rather than allowing the student to go to the DCPS school where Dr. Mebane is employed.  As a result the only available day for Dr. Mebane is Saturday.  (Second Declaration of Karen Shaw)

17.    Defendants dispute that the tutor does not call back or that she only lets the phone ring once.

18.    Defendants dispute material fact numbered 18.  The student was to receive

his tutoring services at Kingsbury School, but did not.  (Amended IEP)

19.    Defendants dispute that it is necessary for this Court to maintain

jurisdiction to compel DCPS to fully comply with the Settlement

Agreement.


Respectfully submitted,


LINDA SINGER
Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.,   Sixth Floor South
Washington, DC 20001
(202) 442-9842
FAX  -  (202) 727-3625
E-mail – maria.merkowitz@dc.gov


October 1, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DARLENE E. HOWELL**,**                    )
Parent and Next Friend of DH,             )
                                          )
                Plaintiff,                )
                                          )        Civil Action No. 07-1066 (RMU)
        v.                                )
                                          )
DISTRICT OF COLUMBIA, *et al.,*           )
                                          )
_____          )

### DEFENDANTS' STATEMENT OF MATERIAL FACTS
### THAT ARE UNDISPUTED

1.   Defendants have provided D.H. with a Dell Wireless Lap Top computer, a
     digital voice recorder, Soothsayer software, Graphic Organized software and
     Wynn Wizard literacy software in compliance with the December 18, 2006,
     Settlement Agreement and the January 10, 2007 amended Individualized
     Education Plan ("IEP")  (Defendants' Ex. 5, Acknowledgement of Receipt of
     Goods).

2.   Best Buy had agreed to ship the requested software directly to the student's
     parents, but because neither parent was willing to wait at home for the UPS
     shipment, Karen Shaw, Interim Director of Federal and Family Court
     Monitoring for the District of Columbia Public Schools, personally delivered
     the software to the plaintiff's residence.  (Defendants' Ex. 6, Declaration of
     Karen Shaw)

3.   On July 24, 2007, Karen Shaw left a message for Mrs. Howell on her voice
     mail, requesting her to call Dr. Ramona Mebane, special education teacher,

and then Acting Principal at Sharpe Health School, to schedule ten hours of assistive tutoring/compensatory education for her son. (Declaration of Karen Shaw)

4.    Dr. Mebane also called plaintiff to set up a time to meet with the parent and student to provide tutoring. (Declaration of Karen Shaw)

5.    Dr. Mebane provided plaintiff with her phone number and asked plaintiff to call her when the student had finished scheduling his college courses at Montgomery College. (Declaration of Karen Shaw)

6.    Dr. Mebane wanted to know what courses the student would be taking and what services he might receive at Montgomery College in order to better ascertain the student's educational needs and align his tutoring with the courses he would be taking and services he would be receiving. (Ex. 4, Second Declaration of Karen Shaw)

7.    Dr. Mebane went to plaintiff's home on September 8, 2007, to provide tutorial services to D.H. but was not permitted to do so. (Declaration of Karen Shaw)

8.    Dr. Mebane suggested to plaintiff that the tutorial services take place at Sharpe Health School, where she is employed as a special education teacher. (Second Declaration of Karen Shaw)

9.    Plaintiff refused to allow her college aged son to go to Sharpe Health School. (Second Declaration of Karen Shaw)

10.    Dr. Mebane suggested to plaintiff that the tutorial services take place during the school week. (Second Declaration of Karen Shaw)

15

11.   Plaintiff insisted that the tutorial services take place in her home.  As a result,

the only day Dr. Mebane could provide tutorial services was Saturday.

(Second Declaration of Karen Shaw)

12.   Roy Carleton Howell is the father of D.H., the minor named in this lawsuit.

(Defendants' Ex. 3 – Resolution Meeting Notes)

13.   Roy Carleton Howell is a practicing attorney. (Plaintiff's Motion for

Summary Judgment, signature line)


                          Respectfully submitted,

                          LINDA SINGER
                          Attorney General for the District of Columbia

                          GEORGE C. VALENTINE
                          Deputy Attorney General, Civil Litigation Division

                          /s/ Edward P. Taptich
                          EDWARD P. TAPTICH [012914]
                          Chief, Equity, Section 2

                          /s/ Maria L. Merkowitz
                          MARIA L. MERKOWITZ [312967]
                          Senior Litigation Counsel
                          441 4th Street, N.W.,   Sixth Floor South
                          Washington, DC 20001
                          (202) 442-9842
                          FAX  -  (202) 727-3625
                          E-mail – maria.merkowitz@dc.gov


October 1, 2007



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*www.k12.dc.us*

Date: 12/18/06

**Parent's Name:**
Mr. Roy C. Howell

**Parent's Address:**
8003 Parkside Lane,NW
Washington, DC  20012

**Subject: Resolution Session for**
**Devin B. Howell**

**DOB:**
1-6-89

**Attending School: Kingsbury Day**

## SETTLEMENT AGREEMENT

A resolution meeting was held on the above referenced date and an agreement between the parties to this action, District of Columbia Public Schools (hereinafter DCPS) and parent was reached.  The parties agree to resolve this matter pursuant to the following terms and conditions (check the box / boxes that apply and initial on corresponding line):

☐ **Eligibility Determination**

____DCPS agrees to issue a prior notice regarding eligibility/ineligibility.
____If the student is found eligible, DCPS will develop an IEP and determine placement.
____DCPS agrees to issue a prior notice of placement within 5 school days, if the placement is public and 30 calendar if the placement is non-public.

☐  **Conduct Evaluations & Hold MDT Meeting**

DCPS agrees to conduct the following assessment(s)/evaluation(s): Or the parent can obtain independent evaluations

- ☐ psycho-educational evaluation
     Clinical evaluation
- ☐ speech/language evaluation
     occupational therapy evaluation
- ☐ physical therapy evaluation
     psychological

Re:     Devin C. Howell

DCPS

    □ hearing screening
    □ vision screening
    audiological assessment
    □ classroom observation
    functional behavior assessment
    □ Vineland Adaptive Scales assessment
    □ vocational assessment (I, II, III) *(circle one)* *Vocational Inventory Assessment*
    □ social history evaluation
    □ assistive technology assessment
    □ psychiatric assessment
    □ neurological evaluation
    □ neuropsychological evaluation

If DCPS fails to complete the evaluation/evaluations within the above stated time frame, the parent can secure the above agreed evaluation(s) at the expense of DCPS, consistent with DCPS cost guidelines, not to exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

X Within 20 calendar days of completion or receiving the last independent evaluation, (assistive
    DCPS will convene an MDT/IEP meeting to review the evaluation(s), amend the technology)
    IEP, as appropriate, discuss placement and issue a prior notice, if necessary.

## Fund Independent Evaluations

___DCPS agrees to fund the following independent evaluation(s):

    educational evaluation
    clinical evaluation
    speech/language evaluation
    occupational therapy evaluation
    □ physical therapy evaluation
    psychological
    □ hearing screening
    □ vision-screening
    audiological assessment
    □ classroom observation
    functional behavior assessment
    □ Vineland Adaptive Scales assessment
    vocational assessment (I, II, III) *(circle one)*
    social history evaluation
    □ assistive technology assessment
    psychiatric assessment
    neurological evaluation
    neuropsychological evaluation

The parent agrees that DCPS' cost liability shall not exceed those specified in the *Superintendents Directive Number 530.6, dated March 20, 2002.*

    ___Within 3 school days DCPS will issue a prior notice, upon receipt of the acceptance letter from if the student is accepted.

Re:     Devin C. Howell

DCPS

_____If the MDT/IEP team proposes a new placement, DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement is public and within 20 school days if the placement is non-public.

## ☒  Compensatory Education

_____DCPS agrees to develop a compensatory education plan by <u>within 45 days of placement at  (during the MDT to review placement)</u>.

_x__DCPS agrees to implement the attached compensatory education plan.
___Other: _____

## ☐  Tutoring

_____DCPS agrees to provide _____ hours of one on one tutoring to compensate for missed specialized instruction.
___Other: _____

## MDT Meeting to Discuss Placement

_  DCPS agrees to issue a *prior notice of placement* within 5 school days if the placement if public and within 30 calendar days if the placement is non-public.

## ☐  Referral for Residential Placement

_____DCPS agrees to send a minimum of three referrals to residential placements within 15 school days of execution of this agreement.

Parent agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement.  Any delay caused by the student, parent, or their representative as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing Complaint, including all claims that the parent now asserts or could have asserted as of the date of this agreement.

Both parties agree that they have 3 days to withdraw the settlement agreement.  If either party decides to withdraw the settlement agreement said withdrawal must be in writing and provided the other party.

Jurisdiction for this agreement lies within the District of Columbia.  This agreement is a legally binding agreement that is enforceable in the U.S. District Court for the District of Columbia or the D.C. Superior Court.

DCPS

Re:    Devin C. Howell

Agreed to: _Kymberly Braxton_

        Principal or designee

                                           _12-18-06_

                                           Date

Agreed to:

        Parent

                                         _18th December 2006_

                                           Date

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

Amended IEP

MDT REFERRAL DATE: _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _IEP_

Page: 2 of 2

STUDENT: Devin Howell        SCHOOL: KDS        DATE: 1/10/07

The team recommends purchasing a digital voice recorder & thinks it will be a benefit for Devin. DCPS will provide a digital voice recorder for Devin.

The team developed - Assistive Technology for Devin during the mtg which will be added to his IEP from '06.

The 10 hours of comp ed for tutory will be implemented afterschool hours by Kingsbury.

MDT- Devin will Continue

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC     ___DCPS CHARTER     __ LEA CHARTER     _x_ NONPUBLIC     ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: [        ]          Meeting Held: [ 12-18-06 ]

Student: [ Devin  B.  Howell ]          DOB: [ 1-6-89 ]          [ Kingsbury Day ]

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Kymberly Grafton | | LEA/CRS |
| Tiece Ruffin, Ph.D. | | Placement Specialist |
| Roy C. Howell | (via phone) | Attorney/Father |
| Patricia  Waller | | Comp. Ed. Specialist |
| | | |
| | | |
| | | |
| | | |
| | | |

[ X ]  **Resolved**          [   ]  **Unresolved**

Introductions were made at the meeting.  The parent's complaint is DCPS failed to provide the student with assistive technology to receive FAPE and compensatory education for 8 months of missed services for the student.

DCPS agrees to provide compensatory education in the form of assistive technology (laptop) along with recommended software by Hospital for Sick Children for the student and a total of 10 hours of tutoring.  DCPS indicated it would take at least 90 days to get the assistive technology with recommended software for the student.  DCPS issued a compensatory education plan for parent's signature at today's session.  DCPS also agrees to convene an MDT meeting in which the student's assistive technology evaluation is reviewed and revise the student's IEP within 20 school days. The student is not obligated to return the laptop and software.

The parent is willing to accept DCPS' offer and will withdraw the hearing quest.  This case is resolved.

## SECOND DECLARATION OF KAREN SHAW

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following statement is true and correct:

1.      My name is Karen Shaw.  I am the Interim Director of Federal and Family Court Monitoring for the District of Columbia Public Schools.  I have held this position since May, 2007.

2.      As the interim Director for Federal and Family Court Monitoring for DCPS, my duties include the monitoring of compensatory education awards required under the Blackman Jones class action lawsuit.

3.      In my capacity as Interim Director of Federal and Family Court Monitoring for DCPS and, in an effort to insure compliance, I spoke with Dr. Ramona Mebane, special education teacher at Sharpe Health School, and former Assistant Principal at Sharpe, on several occasions, to determine what progress was being made to provide D.H. with tutorial services.

4.      Dr. Mebane informed the affiant that she spoke with Mrs. Howell during late July or early August 2007.  During their conversation it was determined that because D.H. was going to be taking classes at Montgomery College that it would be beneficial to provide the student tutoring once he had a class schedule and knew what service he might receive at Montgomery College.  Dr. Mebane asked Mrs. Howell to contact her when she had the information.

5.      Dr. Mebane further informed the affiant that when she did not hear from Mrs. Howell she called her in early September 2007.  At that time Mrs. Howell told Dr. Mebane that she had lost Dr. Mebane's telephone number.

6.      Dr. Mebane further informed the affiant that she suggested to Mrs. Howell that the tutorial services take place at Sharpe Health School, where she was employed as a special education teacher, and that the tutorial services take place during the school week.

7.      Dr. Mebane further informed the affiant that Mrs. Howell refused to allow her

son to go to Sharpe Health School, insisting that the tutorial services take place in her

home.

8.      Dr. Mebane further informed the affiant that she provided approximately 90

minutes of tutorial services to D.H. at the Howell residence on September 15, 2007.

9.      Dr. Mebane further informed the affiant that because she had to provide the

tutorial services in Mrs. Howell's home, the only day she could provide those services was

Saturday.


/s/ Karen Shaw_____

KAREN SHAW
Interim Director of Federal and Family Court Monitoring
for the District of Columbia Public Schools

September 28, 2007



# Blackman/Jones
# Compensatory Education Catalog

## ACKNOWLEDGEMENT OR RECEIPT OF GOODS AND WAIVER

Name of Student: _Devin Howell_    Date of Birth: _1/6/89_

Name of Parent/Guardian: _Darlene Howell_

Address: _8003 Park Side Ln, NW_
_Wash DC 20012_

As part of the *Blackman/Jones* settlement, the District of Columbia Public Schools (DCPS) has agreed to provide compensatory education services or products to members of the class. As a member of the class, you have selected a product or a service from the DCPS Compensatory Education Catalog. Your signature on this form acknowledges that you have received the goods or services selected from the catalog and therefore DCPS has fulfilled its obligation to provide you with compensatory education under the *Blackman/Jones* Consent Decree.

Product or Service Delivered: _500th sayer Software, Digital voice Reader,_
_Graphic Organized Software_
_w/in Wizard Literacy Software_

## ACKNOWLEDGMENT:

The undersigned hereby acknowledges receipt and delivery of the goods or service listed above or described on the attached invoice. The undersigned acknowledges that by receiving these goods or services, DCPS has satisfied its obligation to provide compensatory education related to *Blackman/Jones* delays.

Print Name of Recipient: _Darlene Howell_    Date _7/20/07_

Signature of Recipient: _Darlene S. Howell_

Relationship to Student: _mother_

## WITNESS:

Print Name of Witness: _Karen Shaw_    Date _7/20/07_

Signature of Witness: _____

This catalog is not a Best Buy Advertisement. It is not intended for the general public.
Best Buy is not a party to this litigation and is merely helping facilitate the settlement of this matter.

<u>**DECLARATION OF KAREN SHAW**</u>

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following statement is true and correct:

1.     My name is Karen Shaw.  I am the Interim Director of Federal and Family Court Monitoring for the District of Columbia Public Schools.  I have held this position since May, 2007.

2.     As the interim Director for Federal and Family Court Monitoring for DCPS, my duties include the monitoring of compensatory education awards required under the <u>Blackman Jones</u> class action lawsuit.

3.     In my capacity as Interim Director of Federal and Family Court Monitoring for DCPS, and in an effort to insure compliance, I reviewed the case concerning Devin Howell and the agreement that was entered into with the Office of Special Education on January 12, 2007.

4.     On June 27, 2007, Darlene Howell received a Dell laptop computer from DCPS Office of Special Education.  At that time Mrs. Howell was informed that someone from Best Buy would contact her to schedule delivery of computer software.

5.     Darlene Howell informed the affiant that she was unwilling to wait at home for delivery of the computer software by UPS.  Thus, on July 20, 2007, the affiant personally delivered to the Howell residence a digital voice recorder, Soothsayer software, Graphic Organized software and Wynn Wizard literacy software.

6.     On July 24, 2007, the affiant left a message for Mrs. Howell on her voice mail, requesting her to call Dr. Mebane, Acting Principal at Sharpe Health School, to schedule the promised ten hours of assistive tutoring/compensatory education for her son.

7.     As a result of numerous conversations with Dr. Mebane, the affiant has been informed that Dr. Mebane also called Mrs. Howell to set up a time to meet with the parent and student to provide tutoring.

8.     The affiant has been informed further that Dr. Mebane provided Mrs. Howell with her phone number and asked her to call when she had finished scheduling the student for his college courses. Dr. Mebane further told Mrs. Howell, that even though she was on vacation she would nonetheless, tutor the student at home.

9.     The affiant has been informed further that Mrs. Howell did not contact Dr. Mebane and, that Dr. Mebane called Mrs. Howell again in September, and set up a meeting for September 8, 2007.

10.    The affiant has been informed further by Dr. Mebane that because of unforeseen traffic, Dr. Mebane arrived late at the Howell residence on September 8, 2007, and that Mrs. Howell insisted that the meeting be rescheduled.  Dr. Mebane is currently scheduled to begin tutoring the student on September 14th.


/s/ Karen Shaw_____

KAREN SHAW
Interim Director of Federal and Family Court Monitoring
for the District of Columbia Public Schools