UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARLENE HOWELL : | |
| Parent and Next Friend of D.H., : | |
| : | |
| Plaintiff, : | Civil Action No.:   07-1066 (RMU) |
| : | |
| v. : | Document No.:   1 |
| : | |
| DISTRICT OF COLUMBIA, : | |
| : | |
| Defendant, : | |
| : | |

**MEMORANDUM OPINION**

Denying the Plaintiff's Motion for Injunctive Relief

## I.   INTRODUCTION

The plaintiff, on behalf of her child D.H., brings suit and a motion for injunctive relief alleging that the defendant violated the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, and contract law by failing to provide special education technology and services to D.H. The defendant avers that it has satisfied the terms of the parties' agreement. Because the plaintiff has not established that D.H. is still entitled to services under IDEA, and because the plaintiff's submissions do not support her allegations, the court concludes that the plaintiff has not demonstrated a substantial likelihood of success on the merits. Accordingly, the court denies the plaintiff's request for injunctive relief.

## II.   FACTUAL & PROCEDURAL BACKGROUND

The hallmark of this case to date is a proud display of inadequate briefing. As a result, the court can provide only a cursory discussion of the events giving rise to the litigation. D.H.

was a disabled student within the District of Columbia Public Schools System ("DCPS").  Pl.'s Mot. for TRO ("Pl.'s Mot.") at 1.  The plaintiff sought to secure special educational services for D.H., and a dispute ensued.  On December 18, 2006, the parties developed an Individualized Education Plan ("IEP") for D.H. which they amended via a Settlement Agreement executed January 10, 2007 ("settlement agreement").  *Id*. at 3.  Pursuant to the settlement agreement, the defendant agreed to provide the student with a laptop computer, software programs, a digital voice recorder and 10 hours of compensatory education (tutoring sessions).  Pl.'s Mot., Ex. 1; Def.'s Opp'n to Pl.'s Mot. ("Def.'s Opp'n") at 2.  The plaintiff argues that the defendant agreed to provide this equipment within 90 days, Pl.'s Mot. at 3, but the Due Process Complaint Resolution Meeting Notes ("meeting notes") indicate that the defendant would require "at least 90 days" to secure the equipment and provide it to D.H., Pl.'s Mot., Ex.2 at 3.  The settlement agreement and the attendant documents are silent as to the performance of tutoring services.

The plaintiff's motion does not outline her specific allegations regarding the defendant's failure to comply with the settlement agreement, and her complaint only relates to the defendant's alleged refusal to provide D.H. with the required assistive technology.  *See generally* Compl.  But, the defendant asserts, and the plaintiff does not dispute, that it provided D.H. with all the required technology.  Def.'s Opp'n at 2 (stating that the plaintiff picked up a Dell laptop on June 27, 2007, and the defendant delivered software, including a digital voice recorder, to the plaintiff's home on July 20, 2007).

The only area of contention, therefore, is the 10 hours of tutoring that the defendant agreed to provide D.H.  Def.'s Opp'n at 2-3; *see also* Pl.'s Mot. for Summ. J. at 4 (indicating that only the tutoring sessions remain outstanding).  On July 24, 2007, Karen Shaw of DCPS

requested that the plaintiff contact Dr. Mebane, acting principal at Sharpe Health School, to schedule the required tutoring sessions. Pl.'s Mot. for Summ. J. at 4; Def.'s Opp'n at 2. Shortly thereafter, Mebane contacted the plaintiff to schedule a time to meet with her and to tutor D.H. Def.'s Opp'n at 2. Mebane and the plaintiff had to re-schedule a series of meetings, and the parties dispute the cause of the rescheduled meetings. Pl.'s Mot. Summ. J. at 4-5 (explaining that Mebane refused to schedule tutoring sessions because of a series of scheduling conflicts involving a vacation, a family birthday, a sorority engagement, and a church function, and also stating that Mebane does not return the plaintiff's phone calls, "or will call back and let the phone ring once and hang up before the telephone can be answered"); Def.'s Opp'n at 3 (attributing the scheduling frustrations to the plaintiff's failure to return phone calls, and to the plaintiff's rescheduling a session because of Mebane's delay due to traffic). The parties finally scheduled a tutoring session to occur on September 14, 2007, Def's Opp'n at 3, but the plaintiff contends that the one-hour session took place on September 15, 2007, Pl.'s Mot. for Summ. J. at 5.

According to the defendant, D.H. graduated from high school in June of 2007, and he is currently enrolled in college. Def.'s Opp'n at 4. The plaintiff does not respond to this assertion, but she states elsewhere that "school had ended in early June." Pl.'s Reply to Def.'s Opp'n to Mot. for Summ. J. at 3.

The plaintiff initiated this suit in the Superior Court for the District of Columbia as a motion for a temporary restraining order, asking the court to compel the defendant to comply with the IEP and settlement agreement. The defendant removed the case to this court, but it did not respond to the plaintiff's motion until the court ordered the defendant to show cause why the

plaintiff's motion should not be granted. The defendant responded to the plaintiff's motion on September 21, 2007. Rather than reply to the defendant's opposition, the plaintiff filed a motion for summary judgment,[1] Pl.'s Mot. for Summ. J, which the defendant, in turn, opposes.

### III.   ANALYSIS

#### A.   The Court Denies the Plaintiff's Motion for Injunctive Relief

##### 1.   Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000). It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

---

[1]   The court will rule separately on the plaintiff's motion for summary judgment.

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *Id.* (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

**2.     The Plaintiff has Not Demonstrated a Substantial Likelihood of Success on the Merits**

**a.     The Plaintiff has Not Demonstrated that D.H. is Entitled
to Services Pursuant to the IDEA**

The defendant asserts, and the plaintiff does not contest, that D.H. graduated from the DCPS school system in June of 2007. Def.'s Opp'n at 3 n.1, 4 (stating that D.H. has graduated and is currently enrolled at Montgomery College). Thus, the defendant argues, albeit without legal support, that the plaintiff's claims are moot. The plaintiff never addresses the issue of D.H.'s graduation, merely arguing summarily that D.H. is entitled to continued tutoring services. *See* Pl.'s Mot. for Summ. J. at 4-5.

Pursuant to the IDEA, school districts must educate disabled students between ages 3 and 21, unless doing so with regard to children younger than 5 and older than 18 is inconsistent with state law or practice. 20 U.S.C. §§ 1412(a), (a)(1)-(B)(i). District of Columbia law provides that "[DCPS] shall not be obligated to provide [a Free Appropriate Public Education] to children with disabilities who have graduated from high school with a regular high school diploma." D.C. Mun. Regs. tit. 5, § 3002.2(c). The plaintiff does not contest D.H.'s graduation in June 2007, but she maintains in a conclusory fashion that D.H. remains entitled to IDEA services. Without addressing an issue so crucial to the court's jurisdiction,[2] the court must conclude that the

---

[2]     Because mootness is a jurisdictional issue, on a finding that the plaintiff's claims are moot, the court may *sua sponte* dismiss the complaint. *Mohammed v. Harvey*, 456 F. Supp. 2d 115, 120 (D.D.C. 2006) (stating that "[i]f a court determines that it lacks subject matter jurisdiction, it therefore is duty bound to dismiss the case on its own motion") (citing FED. R. CIV. P. 12(h)(3)). But it is "appropriate for the Court to evaluate mootness based on its own assessment of the record where . . . the record contains adequate information to enable that assessment to occur." *Isenbarger v. Farmer*, 463 F. Supp. 2d 13, 22 n.5 (D.D.C. 2006). Here, the court cannot conclude that the record firmly establishes that D.H.'s graduation has rendered this action moot. For the purposes of the instant motions, however, the court is satisfied that the plaintiff's failure to address D.H.'s graduation status undermines her likelihood of success on the merits.

plaintiff has failed to demonstrate that she is likely to succeed on the merits of her claims.[3] *Moseley v. Bd. of Educ. of Albuquerque Pub. Sch.*, 483 F.3d 689, 693 (10th Cir. 2007) (concluding that graduation mooted a child's request for relief because he could show only past harm) (internal citations omitted); *T.S. v. Ind. Sch. Dist. No. 54*, 265 F.3d 1090 (10th Cir. 2001) (stating that "[i]f a student has graduated from high school and does not contest his graduation, the case is moot") (citing *Bd. of Educ. v. Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000)).

### b. The Plaintiff has Not Shown that the Defendant has Violated the Settlement Agreement

The weakness of the plaintiff's arguments goes beyond the allegation of D.H.'s graduation. The plaintiff argues that the defendant has breached the terms of the settlement agreement by not providing all required assistive technology and services to the defendant "within 90 days." Pl.'s Mot. at 3. The defendant counters that the settlement agreement expresses no agreed-upon time line, merely stating that the defendant would require "at least 90 days" to provide the technology. Def.'s Opp'n at 2. Because the terms of the settlement agreement are silent, and the meeting notes reserve for the defendant "at least 90 days" to provide technology to D.H., the court cannot conclude that the plaintiff has adequately demonstrated that the defendant breached the terms of the settlement agreement.

---

[3] Although the plaintiff does not address the issue of mootness in her motion, and although she did not reply to the defendant's opposition to her motion, she cursorily argues in her motion for summary judgment that "there is [a] reasonable expectation that Plaintiff will be subjected to the same action again." Pl.'s Mot. for Summ. J. at 6. Presumably, the plaintiff invokes an exception to the mootness doctrine, alleging that her injury is capable of repetition yet evading review. But, if D.H. has successfully graduated from the DCPS system, he is not likely to again be eligible for, or denied, IDEA benefits, and the exception does not apply. Thus, the plaintiff spins her wheels on an ambiguous premise, and the court cannot conclude that the plaintiff has improved her chances of succeeding on the merits of her IDEA claims.

D.C. law governs the interpretation and enforcement of settlement agreements pertaining to the IDEA. *Hester v. District of Columbia*, 2007 WL 3034272, at *2 (D.C. Cir. Oct. 19, 2007). Pursuant to D.C. contract law,

> "[w]here the language in question is unambiguous, its interpretation is a question of law for the court. 'A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity.'"

*Independence Mgmt Co., Inc. v. Anderson & Summers, LLC*, 874 A.2d 862, 867 (D.C. 2005) (quoting *Bragdon v. Twenty-Five Twelve Assocs. Ltd. P'ship*, 856 A.2d 1165, 1170 (D.C. 2004)).

The plaintiff bases her entire breach of contract argument on language that simply does not appear in the settlement agreement, and the plaintiff has provided the court with no additional evidence indicating that the defendant agreed to provide technology and services *within* 90 days. Although the settlement agreement itself makes no mention of the 90-day time frame, the resolution meetings notes dated December 18, 2006 expressly state that "DCPS indicated it would take at least 90 days to get the assistive technology with recommended software for the student." Pl.'s Mot., Ex. 2. As best the court can ascertain, the defendant orally represented to the plaintiff at the resolution meeting that it would require at least 90 days to provide the assistive technology to D.H. This representation was then memorialized in the meeting notes. *Id*.

Because the plaintiff's argument rests on an unsupported allegation that the defendant was bound to a 90-day time frame, the court cannot conclude that the plaintiff is likely to succeed on her claims. This is especially true because the documents provided by the plaintiff contradict

her representation of the parties' agreement.[4]  *State v. Baltimore & O.R. Co.*, 89 U.S. 105, 111 (1874) (stating that although an undertaking may be implied in a contract, "the implication must be found in the language of the contract [and i]t is not to be gathered from the presumed or the real expectations of the parties"); *Howard Univ. v. Best*, 484 A.2d 958, 967 (D.C. 1984) (stating that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract" subject to certain exceptions not relevant here) (citations omitted).

### 3. The Plaintiff has Made an Insufficient Showing of Irreparable Harm

The plaintiff argues that the defendant's failure to provide services pursuant to the settlement agreement has produced irreparable harm to D.H. because he has been denied special education and services set out in his IEP.  Pl.'s Mot. at 7.  The defendant counters that the plaintiff cannot demonstrate that D.H. suffered irreparable harm because he successfully graduated from high school and now attends college.  Def.'s Opp'n at 3 n.1, 4.

It is true that students suffer irreparable harm when they "lack[] each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs." *Cox v. Brown*, 498 F. Supp. 823, 829 (D.D.C. 1980).  Even though the defendant's actions may not have violated the settlement agreement, the plaintiff very likely suffered irreparable injury during his last semester

---

[4] Even if the court were to construe the lack of a definite time frame in the settlement agreement to recognize an ambiguity, the court would look to the extraneous evidence of the meeting notes, which represent that the defendant reserved "at least 90 days" to deliver the technology.  *1010 Potomac Assoc. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (stating that "[e]xtrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous") (citations omitted).  Therefore, even considering the meeting notes, the plaintiff has not demonstrated a substantial likelihood of succeeding on her claims.

in the DCPS system due to the defendant's delay in providing him with the necessary assistive technology. In addition, D.H. certainly suffered injury by the defendant's inexplicable decision not to attempt to provide D.H. with tutoring services until July 24, 2007, after D.H.'s alleged graduation date. Def.'s Opp'n at 2. Nevertheless, the plaintiff has only demonstrated that D.H. has suffered injury. Without showing that D.H. is entitled to continued tutoring services, the plaintiff has not demonstrated that he will suffer irreparable injury absent injunctive relief. *See Moseley*, 483 F.3d at 693 (explaining that the prospective relief of an injunction requires a showing of more than past harm or speculative future harm). Accordingly, the court concludes that the plaintiff has made an insufficient showing of harm to warrant injunctive relief.

### 4. Other Interested Parties & Public Interest Considerations

As there are no other interested parties, the court need not address that consideration. There is much to be said regarding the public interest, however. Not only is the public interest not served by a state's failure to comply with the IDEA, it is decidedly undermined by the disregard of special needs children within public schools. But, the court's inquiry is limited to whether the public interest would be served by the grant of injunctive relief in this case. *CityFed Fin. Corp.*, 58 F.3d at 746 (stating that a party seeking injunctive relief must demonstrate "that the public interest would be furthered by the injunction"). And here, serious doubt remains as to whether D.H. is entitled to receive tutoring services pursuant to the IEP and the settlement agreement. *Mazurek*, 520 U.S. at 972 (explaining that it is important for a party seeking injunctive relief to carry the burden of persuasion by a clear showing). Accordingly, the court cannot conclude that the public interest weighs in favor of the plaintiff's request.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for injunctive relief. An order consistent with this Memorandum Opinion is issued this 6th day of November, 2007.

RICARDO M. URBINA<br>
United States District Judge